[No. F023116. Fifth Dist. Dec. 6, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIE V. DANIELS, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II through V.

**COUNSEL**

Eric M. Weaver, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, J. Robert Jibson and John A. O'Sullivan, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BUCKLEY, J.**—In the published portion of this opinion, we hold that expungement of a prior serious or violent felony under Welfare and Institutions Code section 1772[1] does not preclude treatment of the offense as a strike in subsequent criminal proceedings.

### STATEMENT OF FACTS ·

Defendant Willie V. Daniels lived with Jacquelyn Chavira. On May 3, 1994, two deputy sheriffs from the Madera County Narcotic Enforcement Team went to their residence to conduct a probation search of Chavira. Defendant was present and consented to a patdown search. A wooden marijuana pipe with residue smelling of marijuana and a small pill bottle were found in a pocket of defendant's pants. Inside the bottle were three small plastic baggies containing a white powdery substance later determined to contain a usable quantity of methamphetamine.

On June 29, 1994, an amended information charging defendant with felony violation of Health and Safety Code section 11377 (possession of a controlled substance) was filed. It was further alleged that defendant had suffered two prior serious felony or violent felony convictions within the meaning of Penal Code section 667 (the "Three Strikes" law) and that he had served a prison term within the meaning of Penal Code section 667.5. Defendant was ultimately convicted as charged and was sentenced to an indeterminate sentence of 25 years to life plus an additional 1-year term.

### DISCUSSION

I. *Use of an expunged felony conviction as a strike.*

■ The jury found true special allegations that defendant was convicted of first degree burglary, a violation of Penal Code section 459, on December 2, 1976, and that he was convicted of second degree robbery, a violation of Penal Code section 211, on April 17, 1979. Defendant asserts that these convictions have been expunged pursuant to section 1772 and therefore, as a matter of law, cannot constitute strikes. Recognizing that existing case law supports a contrary conclusion, defendant contends recent authorities cannot be applied here because they were published after his honorable discharge from the Youth Authority (YA) and constitute an unforeseen change in decisional law. As we shall explain, both lines of argument are unpersuasive.

Introduced at trial was a certified copy of defendant's YA record. It shows that after defendant was convicted of first degree burglary in 1976 he was

---

[1]All statutory references are to the Welfare and Institutions Code unless otherwise noted.

received by the YA in February 1977. He was paroled in November of that same year. In 1979, defendant was convicted of robbery and again sent to the YA. He was released on parole in February 1980 and received an honorable discharge in October 1981. On December 11, 1981, the "Court set aside verdict of guilty under Sect. 1772 WIC."

Section 1772 is part of the Youth Authority Act. This legislation was enacted "to benefit the public by providing youth offenders with rehabilitative programs such as education, vocational training, work furloughs, and supervised parole." (*People* v. *Pride* (1992) 3 Cal.4th 195, 256 [10 Cal.Rptr.2d 636, 833 P.2d 643].) In relevant part, section 1772 provides that if an individual is honorably discharged from the YA, the offender may petition the superior court to set aside the guilty verdict and dismiss the information. Thereafter, the petitioner shall "be released from all penalties and disabilities resulting from the offense or crime for which he or she was committed, . . . ." (§ 1772.)[2] This provision reflects "a legislative policy enunciated almost 100 years ago to provide incentives to youthful offenders to work towards honorable dismissal or honorable discharge." (*People* v. *Navarro* (1972) 7 Cal.3d 248, 277 [102 Cal.Rptr. 137, 497 P.2d 481].) However, the Legislature did not specifically enumerate the "penalties and disabilities" it intended to release. Interpretation and application of this statute has therefore generated several well-reasoned opinions by our state's highest court as well as the Courts of Appeal.

*People* v. *Navarro, supra,* 7 Cal.3d 248, was the first Supreme Court opinion addressing this subject. After recounting the history of this section and the development of the YA in general, the high court held that the exclusionary provisions of Penal Code section 3052 did not bar a youthful offender who had been honorably discharged from the YA from participating in an addict rehabilitation program. The court reasoned that this was one of the disabilities the Legislature intended to be discharged by expungement, since such a finding comports with the public protective and rehabilitative purposes of both statutes. (7 Cal.3d at pp. 280-281.)

However, in *People* v. *Bell* (1989) 49 Cal.3d 502 [262 Cal.Rptr. 1, 778 P.2d 129], the high court concluded that the prohibition of Penal Code section 12021 against the possession of concealed weapons by felons is not one of the penalties or disabilities released by honorable discharge from YA. (49 Cal.3d at p. 545.) The court explained that the intent of the Legislature in promulgating Penal Code section 12021 was to minimize the danger arising from free access to firearms which can be used for crimes. The law

---

[2]Although this section was substantially rewritten in 1994, the language at issue here was not revised.

presumes this danger is increased when persons possessing the firearm are felons. The court reasoned that while participation in a narcotic treatment program such as was considered in *Navarro* is consistent with the remedial purposes of the Youth Authority Act, "the same could not be said of a decision to permit youthful ex-felons to carry concealed firearms." (49 Cal.3d at pp. 544-545.)

Most recently, in *People* v. *Pride, supra,* 3 Cal.4th 195, the high court found that an offense which has been expunged pursuant to section 1772 is admissible as an aggravating factor in the penalty phase of a capital trial. The court explained that expungement of a "criminal record rewards an honorable discharge, encourages continued success, and protects a rehabilitated adult from the lifelong stigma of a youthful mistake." (3 Cal.4th at pp. 256-257.) These rehabilitative goals are not at issue in a subsequent criminal prosecution. Therefore, the "jury was entitled to know that defendant committed the capital crime undeterred by a prior successful felony prosecution. [Citation.] Such propensity for criminal conduct is relevant even where Welfare and Institutions Code section 1772 applies to the prior offense." (3 Cal.4th at p. 257.)

In *Pride,* the court relied on *People* v. *Jacob* (1985) 174 Cal.App.3d 1166 [220 Cal.Rptr. 520], and *People* v. *Shields* (1991) 228 Cal.App.3d 1239 [279 Cal.Rptr. 403]. Both of these particularly well-reasoned decisions are applicable here. *Jacob* was the first published opinion to interpret section 1772 after enactment of Proposition 8.[3] The court held that imposition of a five-year enhancement for a prior robbery conviction was permissible even though this offense had been expunged after honorable discharge from the YA. The court reasoned, "[a] release from penalties and disabilities for one offense does not mean a release from penalties for subsequent offenses. Although an honorable discharge results in a dismissal of the accusation, such dismissal does not eradicate a conviction for all purposes." (*People* v. *Jacob, supra,* 174 Cal.App.3d at p. 1172.) Expungement of a conviction confers substantial benefits. However, these benefits "do not include a reduced penalty for subsequent crimes. That would thwart the Legislature's effort to help persons like Jacob become law abiding." (*Ibid.*) The court further concluded that even without enactment of Proposition 8, analogous case law supports the conclusion that the prior conviction, although expunged, may be used to enhance defendant's current sentence. (*Id.* at pp. 1173-1174.)

---

[3]"[A]rticle I, section 28, subdivision (f) of the California Constitution, popularly known as Proposition 8, provides in pertinent part: 'Any prior felony conviction of any person in any criminal proceeding, whether adult or juvenile, shall subsequently be used without limitation for purposes of impeachment or enhancement of sentence in any criminal proceeding.'" (*People* v. *Jacob, supra,* 174 Cal.App.3d at pp. 1169-1170.)

In *People* v. *Shields, supra*, 228 Cal.App.3d 1239, the court rejected appellant's argument that *Jacob* had misinterpreted section 1772, likewise concluding that imposition of a five-year enhancement for a prior felony conviction was permissible, even though the conviction had been expunged pursuant to section 1772. (228 Cal.App.3d at p. 1243.) The court summarily dismissed appellant's claim that the remedial purposes of the youthful offender legislation are furthered by removing the possibility of enhanced punishment for subsequent offenses, writing, "[w]e see little incentive to rehabilitation in promising a youthful offender that sentences for his future crimes will be five years lighter if he successfully completes his commitment to the Youth Authority." (*Id.* at p. 1242.)

Most recently, *People* v. *Diaz* (1996) 41 Cal.App.4th 1424, 1429-1430 [49 Cal.Rptr.2d 252], held that expungement of a prior conviction pursuant to Penal Code section 1203.4 does not preclude subsequent consideration of the conviction as a strike. Unlike section 1772, Penal Code section 1203.4 expressly declares that a conviction dismissed pursuant to this section may be pleaded and proved in any subsequent criminal proceedings and shall have the same effect as if it had not been expunged. The court based its conclusion on this express language. However, the difference between the two statutes is not determinative. In *Jacob*, the court relied on cases addressing the effect of Penal Code section 1203.4, noting that the legislative history and express language of both sections "state that the purpose of a dismissal is to release a defendant from all penalties and disabilities resulting from the offenses for which he was committed, and not from penalties or disabilities resulting from future offenses." (*People* v. *Jacob, supra*, 174 Cal.App.3d at p. 1174, fn. 3.) In *Shields*, the court rejected appellant's challenge to *Jacob*'s reasoning on this point and concluded that the failure of the Legislature to amend section 1772 to contain an express declaration that expunged convictions could be used in subsequent proceedings is not momentous. "Legislative silence provides but weak support for such an inference. It is equally likely that the Legislature is aware of and approves the *Jacob* court's interpretation of section 1772 and has deliberately refrained from amending it." (*People* v. *Shields, supra*, 228 Cal.App.3d at p. 1243.)

The foregoing authorities support the determination that the phrase "all penalties and disabilities" as used in section 1772, does not preclude treatment of expunged felony convictions as strikes. The Three Strikes law is not a rehabilitative statute designed to provide nonpunitive treatment as was considered in *Navarro*. Rather, just like the five-year enhancement provision considered in *Jacob* and *Shields*, the Three Strikes law was enacted as a public protection measure. In fact, the statute expressly provides that its purpose is to ensure longer prison sentences and greater punishment for

individuals who commit a felony after having been previously convicted of serious or violent felony offenses and released into society. (Pen. Code, § 667, subd. (b).) As was explained in *Jacob* and *Shields*, the rehabilitative goals of the Youth Authority Act are not furthered by relieving defendant of the consequences occasioned by commission of another offense. Concluding that the prior convictions at issue here could not be treated as strikes would actually undermine both the Youth Authority Act and the Three Strikes law. (*People* v. *Jacob*, *supra*, 174 Cal.App.3d at p. 1172.)

Defendant argues *Navarro* "held that the use of a prior conviction to affect the range of punishments for a future convictions [*sic*] was a collateral consequence of the earlier offense and thus a penalty or disability that could not be imposed after expungement." He contends cases such as *Pride, Jacob* and *Shields* represent an unforeseen departure from *Navarro* and, because they were published after he had received an honorable discharge, cannot be applied here. The argument is unfounded. The claimed shift in interpretation of section 1772 is premised on a faulty interpretation of *Navarro*. There was no broadly expressed holding in *Navarro* prohibiting any use whatsoever of the expunged conviction. In fact, the court expressly declared, "[i]t is inappropriate to attempt to here define all the penalties and disabilities intended to be released by section 1772, or its counterpart section 1779." (*People* v. *Navarro*, *supra*, 7 Cal.3d at p. 280.) The court only addressed the "specific question" whether exclusion from the treatment program at issue was a penalty or disability to be released by section 1772. It decided "this question categorically." (7 Cal.3d at p. 280.) Subsequent authorities have distinguished *Navarro* (see, e.g., *People* v. *Jacob*, *supra*, 174 Cal.App.3d at p. 1171), but its central holding has not been repudiated or even questioned. In fact, later authorities have followed the same line of analysis used in *Navarro*. For example, in *Bell*, the court discussed *Navarro* and another case after which it specifically declared, "[w]e undertake a similar analysis here." (*People* v. *Bell*, *supra*, 49 Cal.3d at p. 544.)

In any event, even were we to have found there had been a significant change in the interpretation of section 1772, defendant would not be relieved from application of recent authorities. In *Jacob* the court determined that the prohibition against ex post facto laws does not prohibit application of Proposition 8 even though the prior conviction at issue was expunged before the initiative was enacted. "Proposition 8 made it possible for Jacob to be disadvantaged only if he committed an offense subsequent to its passage. Thus, Proposition 8 did not operate retrospectively on Jacob, but gave him fair notice that future conduct could result in a specific punishment." (*People* v. *Jacob*, *supra*, 174 Cal.App.3d at p. 1172.) Likewise here, even if *Navarro* had been expressly overruled, application of recent authorities would not

violate defendant's due process rights since the instant offense was committed well after publication of *Jacob, Shields* and *Pride.* Thus, defendant had fair notice that honorable discharge did not eradicate the underlying conviction for all purposes and that commission of a subsequent offense would subject him to enhanced penalties.

II.-V.*

. . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The jury's true finding of defendant's 1976 burglary conviction is vacated and set aside. The case is remanded to the superior court for resentencing. In all other respects, the judgment is affirmed.

Dibiaso, Acting P. J., and Harris, J., concurred.

*See footnote, *ante*, page 520.